(Not for Publication)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____
                                   :
DENNIS SISTRUNK,                   :
                                   :
        Plaintiff,                 :      Civil No. 1:05-cv-1506 (RBK)
                                   :
    v.                             :      **OPINION**
                                   :
CAMDEN COUNTY WORKFORCE            :
INVESTMENT BOARD, et al.,          :
                                   :
        Defendants.                :
_____:

**KUGLER**, United States District Judge:

Presently before the Court is a motion by Defendant Camden County Workforce Investment Board ("Defendant") seeking summary judgment against Plaintiff Dennis Sistrunk ("Plaintiff") on Plaintiff's suit brought pursuant to Title VII of the Civil Rights Act of 1964, the New Jersey Law Against Discrimination, the First Amendment of the United States Constitution, and the free exercise of religion clause of the New Jersey Constitution. For the reasons set forth below, Defendant's motion for summary judgment will be denied in part and granted in part.

**I.     BACKGROUND**

Plaintiff filed a complaint with this Court on March 16, 2005 against Defendant Camden County Workforce Investment Board.[1]  In his complaint, Plaintiff alleged that Defendant violated

_____
        [1]      Unless otherwise noted, the facts as set forth below are agreed upon by all parties.

1

his constitutional and civil rights as guaranteed under the state and federal constitutions.

Plaintiff's allegations arise from the October 3, 2003 termination of his employment with Defendant. Defendant provides strategic planning of all employment, training and education-related programs and services in Camden County, New Jersey. Defendant hired Plaintiff as a Youth Coordinator on January 13, 2003. Plaintiff's primary responsibilities as a Youth Coordinator were to recruit adjudicated youth between the ages of 14 and 21 into Defendant's programs and to act as a liaison between Defendant and the family court system. Plaintiff's position required him to have extensive contact with parole officers, judges, members of the prosecutor's office, youth and parents.

Plaintiff alleges that he is a practicing Rastafarian and that because of his beliefs, he wears his hair in a style known as "dreadlocks." Plaintiff wore dreadlocks at the time Defendant interviewed and hired Plaintiff and throughout Plaintiff's employment. During Plaintiff's employment, he reported to Al Walker, Defendant's Project Manager. On the first day of employment, Defendant presented Plaintiff with Defendant's Employee Handbook that contained the agency's policies, procedures and standards of conduct, including the agency's dress code.[2]

---

[2] Paragraph 1.7 of the Employee Handbook provides:

> **1.7 Dress Code**
> As representatives of the Camden County Workforce Investment Board, staff are expected to exhibit a neat, well groomed appearance. Radical departure from conventional professional dress or personal grooming (including, but not limited to: excessively long hair, untrimmed facial hair on males, excessive make-up, short dresses or skirt, tank tops, shorts or shower thong-type footwear) is not permitted. The Camden County Workforce Investment Board will not be held liable for damage to clothing or accessories while you are on duty. If the Executive Director decides that a staff member is in violation of the dress code, the staff member will be asked to go home and change. The time required to do this is unpaid.

Section 5.6 of the Employee Handbook provides specific employee offenses that warrant immediate dismissal.[3]  On January 13, 2003, Plaintiff signed an acknowledgment indicating receipt of the Employee Handbook.  However, Plaintiff alleges that he was not specifically aware of the policy regarding immediate dismissal.  Plaintiff further claims that the policies in the Employee Handbook were illusory because they were subject to change at any time at the discretion of the employer.  Plaintiff never raised any concerns to Defendant regarding the dress code policy or any subsequent conflicts with his religious practices.

Beginning in July 2003, various members of Defendant's staff counseled Plaintiff regarding the need to appear more professional with reference to his hair and clothing.  Plaintiff then purchased work-appropriate clothing and his wardrobe was no longer an issue.  Further, Defendant claims that Defendant gave Plaintiff numerous tips on how to maintain and style dreadlocks in a professional manner, but Defendant alleges that Defendant never instructed Plaintiff to cut his hair.

In contrast, Plaintiff alleges that Pat Collier, one of Defendant's supervisors, explicitly instructed Plaintiff at a staff meeting to either cut his hair or not return to work.[4]  During this meeting, Plaintiff did not expressly state that he could not cut his hair due to his religious

---

The Employee Handbook also sets forth Defendant's Equal Opportunity Employer Statement, Affirmative Action Statement, and Harassment Policy.

[3]  Section 5.6 mandates immediate dismissal for employee "absence for three consecutive days without notice to the Executive Director, in which event the offending staff member will be deemed to have quit voluntarily."

[4]  Other members of Defendant's staff were present at this meeting.  They include Al Walker, Executive Director Tom Billet and Samara Lawry.

practice, although Plaintiff claims that his hairstyle was a component of his Rastafarian beliefs. Plaintiff asserts that he implied that his beliefs precluded cutting his hair during a conversation with his supervisor, Al Walker, that occurred after the staff meeting. Plaintiff alleges that he told Walker that cutting his hair would disrupt his "way of life."[5] Plaintiff further alleges that following the above referenced meeting, one of Defendant's secretaries, Sheddiea Gordon, informed members of Defendant's staff that Plaintiff could not cut his hair due to his religion.[6]

Plaintiff claims that as a result of the alleged ultimatum, he did not return to work and instead waited to see if Defendant would withdraw the demand. On October 1, 2, and 3, 2003, Plaintiff failed to report to work as scheduled and did not contact his supervisor. Defendant's Executive Director, Tom Billet, unsuccessfully attempted to contact Plaintiff several times during this period to determine why Plaintiff failed to report to work for three consecutive days. As a result of the absences, Defendant terminated Plaintiff's employment pursuant to Section 5.6 of the Employee Handbook.

Plaintiff alleges that he contacted one of Defendant's secretaries and informed them that he could not report to work because he was ill. Specifically, Plaintiff claims that the decision to

---

[5] Specifically, Plaintiff alleges that he previously explained to Al Walker that he could not cut his hair due to his way of life and that there were no further inquires following his explanation. Plaintiff claims that this was due to a general understanding that his "way of life" referred to his religious practice. Plaintiff further claims that Defendant was aware of his religious affiliation by noting that several of Defendant's staff members observed a picture of Plaintiff at a Kwanzaa festival standing behind a Rastafarian banner.

[6] Plaintiff claims that Sheddiea Gordon had knowledge of his obligation to maintain his dreadlocks due to his religious beliefs. Plaintiff contends that Ms. Gordon was the only member of Defendant's staff who was willing to discuss his Rastafarian beliefs with him. Despite these allegations, Sheddiea Gordon stated, during her deposition, that she never had a conversation with Plaintiff regarding the requirement to cut his hair.

either cut his hair or lose his employment made him ill.  Further, Plaintiff claims that his friend, Obanion Gordon, contacted Defendant on October 3, 2003, and advised Defendant that Plaintiff did not report to work due to the conflict involving his hair.

On October 8, 2003, Plaintiff wrote a letter to Defendant explaining that he failed to report to work due to the ultimatum regarding his hair.  However, Defendant terminated Plaintiff's employment due to his three consecutive absences.  On October 14, 2003, Defendant sent Plaintiff a letter that provided official notice that Plaintiff's employment was terminated as of October 3, 2003.

## II.  STANDARD FOR SUMMARY JUDGMENT

Defendants moved for summary judgment pursuant to Fed. R. Civ. P. 56.  Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  A genuine issue of material fact exists only if  "the evidence is such that a reasonable jury could find for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  When the Court weighs the evidence presented by the parties, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."  Id. at 255.

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. Celotex, 477 U.S. at 330. The moving party may satisfy this burden by either (1) submitting affirmative evidence that negates an essential element of the nonmoving party's claim; or (2) demonstrating to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case. Id. at 331.

Once the moving party satisfies this initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

## III. DISCUSSION

### A. The Title VII Religious Discrimination Claim

Title VII of the 1964 Civil Rights Act requires employers to make reasonable accommodations for their employees' religious beliefs and practices, unless doing so would result in "undue hardship" to the employer. 42 U.S.C. § § 2000e2(a)(1),[7] 2000e(j).[8] To establish a prima facie case of religious discrimination under Title VII, the employee must establish that: (1) he or she holds a sincere religious belief that conflicts with a job requirement; (2) he or she informed the employer of the conflict; and (3) he or she was disciplined for failing to comply with the conflicting requirement. Shelton v. Univ. of Med. & Dentistry of N.J., 223 F.3d 220,

---

[7] "It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e2(a)(1).

[8] "The term 'religion' includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

224 (3d Cir. 2000) (quoting Protos v. Volkswagon of Am., Inc., 797 F.2d 129, 133-34 (3d Cir. 1986), cert. denied, 479 U.S. 972 (1986)). Once the employee establishes a prima facie case, the burden shifts to the employer to show that it made good faith efforts to accommodate, or that the requested accommodation would result in an undue hardship on the employer. Id.[9]

Defendant argues that Plaintiff failed to establish both the second and third prongs of its prima facie case. Specifically, Defendant argues that Plaintiff did not provide sufficient evidence to show that he informed Defendant of a conflict between his religious beliefs and an employment requirement. Further, Defendant contends that Plaintiff's termination was solely the result of his consecutive absences in violation of the agency's policies and that Plaintiff's religious beliefs were not taken into account.

*1. Sincere Religious Belief*

To ascertain whether an activity qualifies as the kind of religious belief that merits accommodation, courts look to "whether the beliefs professed by a claimant are sincerely held and whether they are, in his own scheme of things religious." Bailey v. Associated Press, No. 01-CV-4562-LTS-RLE, 2003 WL 22232967, at *7 (S.D.N.Y. 2003) (quoting Patrick v. LeFevre, 745 F.2d 153, 157 (2d Cir. 1984)). Summary judgment is seldom appropriate in subjective inquiries and, in religious accommodation cases such as this, should be granted only where "[o]n

---

[9] This Court is mindful that the Third Circuit's burden shifting approach to Title VII religious discrimination cases has not been accepted or rejected by the Supreme Court. See Ansonia Bd. of Educ. v. Philbrook, 479 U.S. 60, 67 (1986). The Court specifically declined to "establish for religious accommodation claims a proof scheme analogous to that developed in other Title VII contexts, delineating the plaintiff's prima facie case and shifting production burdens." Id. Absent further guidance from the Supreme Court, this Court will continue to apply the prima facie test and burden shifting approach adopted by the Third Circuit. See Shelton, 223 F.3d at 225.

7

the record before the Court, a reasonable jury could only conclude that [the employee's] religious assertion was not bona fide." Hussein v. The Waldorf-Astoria, 134 F. Supp. 2d 591, 597 (S.D.N.Y. 2001).

For purposes of this motion, Plaintiff presented sufficient evidence to satisfy the first prong of the prima facie test. Specifically, Plaintiff allegedly believed that he was required to either cut his hair or lose his employment with Defendant. Since Plaintiff contends that the manner in which he wore his hair was a result of his religious beliefs and practices, Plaintiff possessed the sincere religious belief sufficient for this prong of the analysis.

*2. Defendant's Notice*

The Third Circuit requires employees to inform "their employers of their religious beliefs prior to the alleged discriminatory action in order to make out a prima facie case of discrimination based on failure to make reasonable accommodations." Protos, 797 F.2d at 133. Pertinent to the present case, the same rule applies when the plaintiff alleges that they were discharged on account of their religion. Shelton, 223 F.3d at 225.

Here, the Court finds that Plaintiff established a genuine issue of material fact regarding the Defendant's notice of the alleged conflict between Plaintiff's religious beliefs and an employment requirement. Plaintiff was allegedly given an ultimatum at a staff meeting with his supervisor and several other members of Defendant's staff to either cut his hair or not return to work. Although Plaintiff does not contend that he explicitly informed the staff members present at this meeting that he could not comply with this requirement due to his religious beliefs, Plaintiff has set forth sufficient evidence to create a genuine issue of material fact that only a jury could decide.

Plaintiff argues that, following the alleged ultimatum issued during the staff meeting, he mentioned to his supervisor, Al Walker, that he could not cut his hair because of his "way of life." Plaintiff asserts that "way of life" implied his religion. However, Al Walker testified that he had no knowledge of Plaintiff's religious beliefs. If this conversation implied Plaintiff's alleged conflict, then the second prong of Plaintiff's prima facie case could be satisfied.

Plaintiff further claims that after he was given the ultimatum, he expressly informed one of Defendant's secretaries, Sherriea Gordon, that he could not cut his hair because of his Rastafarian beliefs and that she discussed the issue on Plaintiff's behalf with members of Defendant's staff. Finally, Plaintiff's friend, Obanion Gordon, testified that he contacted Tom Billet during Plaintiff's absence from work and explained the nature of the conflict involving Plaintiff's hair.

Defendant contests Plaintiff's assertions that it possessed the requisite notice of the alleged conflict. Specifically, Defendant argues that Plaintiff never explicitly expressed a conflict between his employment requirements and his Rastafarian practices. Due to the factual disputes present, Defendant failed to establish the nonexistence of a genuine issue of material fact and therefore summary judgment is inappropriate.

*3. Discipline for Failure to Comply*

Defendant contends that because Plaintiff failed to report to work without notice to the Executive Director on October 1, 2 and 3 he was terminated pursuant to Section 5.6 of the Employee Handbook and thus cannot establish that he was disciplined for failing to comply with an employment requirement that conflicted with his religious beliefs. Because there exists a material question of fact as to whether Plaintiff's termination was disciplinary action taken in

9

response to his refusal to cut his hair, summary judgment will be denied.

Plaintiff alleges that his friend, Obanion Gordon ("Gordon"), contacted Defendant's Executive Director, Tom Billet ("Billet"), on October 3, 2003.[10] According to Gordon's testimony, Billet was given sufficient information to realize that Plaintiff's absences were the result of the alleged conflict involving his hair.[11] If Gordon spoke with Billet on October 3, Defendant had notice of why Plaintiff was absent and immediate dismissal under Section 5.6 of Defendant's Employee Handbook was therefore inappropriate.

Since "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor," a reasonable jury could find that if Plaintiff's termination occurred after Gordon's discussion with Billet, it was a disciplinary response to Plaintiff's refusal to cut his hair due to his religious beliefs.[12]

The Court finds that Plaintiff established genuine issues of material fact regarding its prima facie case of religious discrimination and therefore summary judgment is denied.

---

[10] Despite this assertion, Plaintiff testified during his deposition that he could not recall when Gordon contacted Billet, but that he knew it was in October.

[11] Specifically, Gordon testified that he explained to Billet that Plaintiff was upset over being required to cut his hair and that his hair was a component of his religious practice. According to Gordon, Billet's response was that it was not appropriate for Plaintiff to "wear his hair like that any longer."

[12] Although Defendant claims that Plaintiff did not establish its prima facie case of religious discrimination, Defendant alternatively argues that it offered Plaintiff a reasonable accommodation in response to the conflicts that arose from Plaintiff's appearance. Defendant primarily argues that it never instructed Plaintiff to cut his hair, but only to make it appear more professional and well groomed. Defendant contends that this advice was a reasonable accommodation to the alleged conflict. However, the record contains evidence to suggest that Plaintiff was instructed to cut his hair or not return to work. Because this issue ultimately raises a question of material fact, it cannot properly be decided on summary judgment.

**B. The New Jersey Law Against Discrimination Claim**

When reviewing claims under the New Jersey Law Against Discrimination, courts apply the same tests as applied to Title VII claims. Abramson v. William Paterson College, 260 F.3d 265, 282 (3d Cir. 2001). Accordingly, this Court will rely on the reasoning set forth in Section A above in denying Defendant's motion for summary judgment as to Plaintiff's claims brought pursuant to the New Jersey Law Against Discrimination.

**C. The Free Exercise Clause of the First Amendment Claim**

The Free Exercise Clause of the First Amendment, made applicable to the States through the Fourteenth Amendment, see Cantwell v. Connecticut, 310 U.S. 926 (1940), provides that "Congress shall make no law . . . prohibiting the free exercise" of religion. Fraternal Order of Police Newark Lodge No. 12 v. City of Newark, 170 F.3d 359 (3d Cir. 1999).

"Depending on the nature of the challenged law or government action, a free exercise claim can prompt either strict scrutiny or rational basis review." Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly, 309 F.3d 144, 165 (3rd Cir. 2002). To satisfy strict scrutiny in a challenge under the Free Exercise Clause, a law or regulation burdening religiously motivated conduct must serve a compelling government interest and must be narrowly tailored to serve that interest. Id. Rational basis review "requires merely that the action be rationally related to a legitimate government objective." Id.

If a law is "neutral" and "generally applicable," and burdens religious conduct only incidentally, the Free Exercise Clause offers no protection. Id. If a law burdening religiously motivated conduct is not neutral and not generally applicable it must satisfy strict scrutiny. Id. Similarly, a law must satisfy strict scrutiny if it permits individualized, discretionary exemptions

because "such a regime creates the opportunity for a facially neutral and generally applicable standard to be applied in practice in a way that discriminates against religiously motivated conduct." Blackhawk v. Pennsylvania, 381 F.3d 202, 209 (3rd Cir. 2004), citing Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 537 (1993).

Here, Plaintiff alleges that Defendant violated his right to free exercise of religion under the First Amendment of the United States Constitution by requiring him to cut his hair, despite its religious significance, pursuant to the Defendant's dress code policy. However, even when viewing the evidence in the light most favorable to Plaintiff, Plaintiff failed to set forth a valid claim under the First Amendment and therefore Defendant is entitled to summary judgment regarding this claim.[13]

*1. Neutrality*

The Supreme Court held that "if the object of a law is to infringe upon or restrict practices because of their religious motivation, the law is not neutral." Lukumi, 508 U.S. at 531. Thus, a law is "neutral" if it does not target religiously motivated conduct either on its face or as applied in practice.[14] Id. Although laws that appear facially neutral are not determinatively consistent with the First Amendment, "the minimum requirement of neutrality is that a law not discriminate on its face." Id. at 533. However, "official action that targets religious conduct for

---

[13] Plaintiff submitted no evidence to rebut Defendant's assertion that it is entitled to summary judgment on the First Amendment claim. Plaintiff's brief does not address this issue.

[14] In situations where government officials exercise discretion in applying a facially neutral law, so that whether they enforce the law depends on their evaluation of the reasons underlying a violators conduct, they contravene the neutrality requirement if they exempt some secularly motivated conduct but not comparable religiously motivated conduct. Id.

distinctive treatment cannot be shielded by mere compliance with the requirement of facial neutrality.  The Free Exercise Clause protects against governmental hostility which is masked, as well as overt." Id. at 534.

Here, Defendant's dress code provision is facially neutral, primarily because the requirements of a neat and well-groomed appearance apply to all employees, regardless of religious affiliations and beliefs.  Further, Plaintiff submitted no evidence to suggest that Defendant exercised discretion in enforcing the dress code policy or that employees' religious practices influenced the enforcement of the policy.  Plaintiff failed to established the existence of any official action that is either overtly or indirectly hostile to his free exercise of religion.

*2. General Applicability*

A law does not satisfy the general applicability requirement if it "burdens a category of religiously motivated conduct but exempts or does not reach a substantial category of conduct that is not religiously motivated and that undermines the purposes of the law to at least the same degree as the covered conduct that is religiously motivated." Blackhawk, 381 F.3d at 210.

The Court finds that the dress code policy is generally applicable to all people employed by Defendant.  Plaintiff has not established that Defendant's dress code policy burdens a category of religiously motivated conduct while exempting a substantial category of conduct that is not religiously motivated.  Further, the dress code does not allow for any specific exceptions or exemptions for any reasons, religious or secular.

Based on the evidence presented, the Court finds that Defendant's dress code policy is neutral and generally applicable.  Therefore, any burden imposed on Plaintiff's religious practices

13

was purely incidental and this Court will not apply the strict scrutiny standard and will instead apply rationality review. Accordingly, Defendant established that the dress code policy is rationally related to the legitimate government objective of prohibiting unprofessional and unconventional appearances. The dress code policy is consistent with the First Amendment and therefore, Defendants are entitled to summary judgment as a matter of law.[15]

**D. Plaintiff's Claim Under the New Jersey Constitution**

Since the First Amendment has been made applicable to the states by the Fourteenth Amendment of the United States Constitution, and because New Jersey's Religion Clause is less pervasive than the First Amendment, New Jersey courts have limited its discussion of the religion clauses to the federal provisions. South Jersey Catholic School Teachers Org. v. St. Teresa of The Infant Jesus Church Elementary School, 150 N.J. 575, 586 (1997). Accordingly, Defendant is entitled to summary judgment regarding Plaintiff's claim under the New Jersey Constitution for the reasons set forth in Section C, supra.

**V. CONCLUSION**

For the foregoing reasons, the Court denies Defendant's motion for summary judgment as to Plaintiff's religious discrimination claims under Title VII of the 1964 Civil Rights Act and the New Jersey Law Against Discrimination, and grants Defendant's motion for summary judgment as to Plaintiff's free exercise of religion claims under the United States Constitution and the New

---

[15] To state a claim under 42 U.S.C §1983, Plaintiff must demonstrate a violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law. Because the Court finds that Defendant did not violate Plaintiff's First Amendment rights, it is unnecessary to address Plaintiff's §1983 claim.

Jersey Constitution.

Dated: 4/18/2007                                             s/Robert B. Kugler
                                                             Robert B. Kugler
                                                             United States District Judge